

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| PGS | *610 Federal Plaza* |
| F. #2025R00646 | *Central Islip, New York 11722* |

March 24, 2026

<u>By Hand and ECF</u>

The Honorable Nusrat J. Choudhury
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

The Honorable Anne Y. Shields
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

> Re: United States v. Marc Serafino
> <u>Criminal Docket No.: 26-054 (NJC)</u>

Dear Judge Choudhury and Judge Shields:

The government respectfully submits this letter in advance of the defendant Marc Serafino's arraignment scheduled for March 24, 2026, before the Honorable Anne Y. Shields, United Stated Magistrate Judge, to request that a permanent order of detention be entered with respect to the defendant. As further described below, the defendant poses a significant danger to the community, is a flight risk and has violated the conditions of release following his arrest in November 2025.

I.  <u>Background</u>

The Department of Homeland Security, Homeland Security Investigations ("HSI") first opened its investigation into the defendant following the referral to law enforcement of approximately 25 separate reports that were generated by the National Center for Missing and Exploited Children of the online distribution of child pornography, between June 2024 and September 2025, that was ultimately linked to the defendant. On November 6, 2025, HSI agents executed a search warrant at the defendant's residence and recovered six electronic devices that were later forensically analyzed. Law enforcement was able to examine five of the devices – all cell phones – and discovered child pornography stored in each device. The defendant waived his <u>Miranda</u> rights and was interviewed by agents during the search of his home, and admitted to possessing and distributing child pornography.

A criminal complaint was filed and the defendant was arrested on November 13, 2025. Following his initial appearance before Judge Shields, the defendant was released on bond. On March 11, 2026, the grand jury returned a four-count indictment charging the defendant with distribution of child pornography and possession of child pornography.

II. Newly Discovered Criminal Conduct

The forensic search and analysis of the defendant's devices uncovered evidence of additional, and far more serious, criminal conduct. Specifically, agents discovered sexually explicit chats between the defendant and children as young as 9 years old that were stored in the defendant's phones. During these chats, the defendant manipulated and intentionally persuaded numerous children to produce sexually explicit photographs and videos of themselves and send them to the defendant via the internet.[1] In most cases, the defendant asked the victims their age and sexual orientation before getting into more graphic, sexually charged questions. The defendant took on fake personas during the chats, adjusting his age, gender and sexual orientation to best facilitate forming a connection with each particular victim. He often groomed the victims by praising their physical appearance and leading them to believe that they were in a romantic relationship with the defendant's alter ego.

The investigation has thus far identified more than six suspected minors with whom the defendant solicited and received child sexual abuse material ("CSAM"). For example, in July 2020, the defendant began communicating with a 9 year-old girl, Jane Doe-1. Agents recovered approximately 12 images of Jane Doe-1 that constitutes child pornography from a cell phone belonging to the defendant. The defendant solicited sexually explicit images from Jane Doe-1 during chats with her on Snapchat where he pretended to be an 11 year-old girl. The following are excerpts from those chats:[2]

> DEFENDANT: "hi"; "how old r u?"
>
> JD1: "9 hbu (how bout you)"
>
> DEFENDANT: "11"; "u like oldergirls?"
>
> JD1: "yea your soo hot were you from"
>
> DEFENDANT: "u bi/les?"
>
> JD1: "Bie"
>
> DEFENDANT: "im very sexual"; "hopethats ok"

---

[1] At the Court's request, the government is prepared to provide full copies of the chats described herein.

[2] The transcription of the chats herein are not edited for grammatical or spelling errors and are presented as they appeared in the defendant's cell phone.

JD1:                "Yea"

Thereafter, the defendant escalated the sexual tone of the chat and steered the conversation towards the sharing of sexually explicit pictures.

DEFENDANT:   "im very comfortable with being naked too.  I don't have the most sexy body. But its natural to have these sexual attractions"; "does my pic make u turned on to me?"

JD1:                "I don't have eny boobs"

DEFENDANT:   "its ok"; "u have to be comfortable with who you are"; "and big boobs aren't everyones thing anyway"; "I personally am not attracted to big boobs.  I likes small"

JD1:                "Yea same"

DEFENDANT:   "can I see ur body too?"; "I love that pose"; "I would love it even more with less clothes on"; "send me onw without ur shirt on just so I know u will"

JD1:                "kk (okay)"; "Hold on"

DEFENDANT:   "and you'll show pussy too, right?"; "u too, ok?"; "mmmm so sexy!"; "I want to lick ur pussy"; "send me more please" [3]

At one point the victim wanted to call and speak to the defendant, which he obviously could not do, so the defendant deflected her requests, provided explanations why he could not talk and threatened to block her number if she persisted.

JD1:                "Ima call you kk"

DEFENDANT:   "ok I cant call"; "pls dont"; "my mom can hear the ringing"; "im not supposed to be on snap"

JD1:                "Just ancer write away"; "Y can't you be on snap?"

DEFENDANT:   "my parents are real strict"; "my phone is supposed to only be for emergencies"

JD1:                "Ancer the phone plssssssss"

_____

[3]      The defendant sent Jane Doe-1 sexually explicit images of a young female to maintain the ruse that he was an 11 year-old girl.

DEFENDANT: "im answering u.  im writing back to everything u say"

JD1: "Plssss"

DEFENDANT: "aorry if the phone rings I will have to block u"; "im sorry.  I just cant risk it"

The defendant then uses emotional manipulation to keep Jane Doe-1 engaged.

DEFENDANT: "I love u"

JD1: "I love you to"; "Will you be my gf"

DEFENDANT: "yes!  Can we date?"; "so can we continue from where we left off?"; "I am like super tingley inside from u"

Notably, years later, on June 17, 2025, the defendant messaged Jane Doe-1 again, but it does not appear that she responded.

From September to October 2023, the defendant communicated on Snapchat with Jane Doe-2, who identified herself as a bisexual 15 year-old female.  To manipulate her into sending him sexually explicit images of herself, the defendant pretended to be a teenage bisexual male.  He led the victim to believe that they had a budding friendship and he needed her advice and encouragement with another boy he was trying to impress.  The defendant sent pictures of a male penis – purported to be his – to Jane Doe-2 under the guise of getting her opinion before sending them to his male crush.  Thereafter, he asked Jane Doe-2 to send him naked pictures of herself.

JD2: "I think he'll like it frrr (for real)"; "And it is nottt small trust me"

DEFENDANT: "Aw thanks"; "Youre hot!"; "Can I see more of ur body too?"; "Do u mind if it gets me hard?"; "So I still wanna take some oics of my hard d for him"; "But I get nervous itll look small"

JD2: "Show me I'll tell you if it looks small"

DEFENDANT: "And again, thank u SO much for being there for me"

JD2: "Ofccc!!! (of course)"

DEFENDANT: "Can u help me get hard?"

JD2: "Yea! I have some saved stuff"

DEFENDANT: "Oh fuck that's hot"; "Any full naked?"; "Like head to toe?"

Then, after the defendant confirmed Jane Doe's age of 15, he asked her to help him masturbate by going into the bathroom and sending him sexually explicit images of herself and directed her on what he wanted her to do.

Like with Jane Doe-1, the defendant recently reached out to Jane Doe-2. On October 29, 2025, days before the search warrant was executed at his house, the defendant messaged Jane Doe-2, but she did not respond.

Law enforcement has interviewed Jane Doe-2, who, after being shown the chats and a video that was recovered from the defendant's cell phone, confirmed that she was the individual that the defendant was communicating with in the subject chats and acknowledged sending the video to the defendant.

The defendant communicated on Snapchat with Jane Doe-3 from March 2023 to November 2023. Jane Doe-3 identified herself as a 14 year-old bisexual female. The defendant claimed to be a 14 year-old bisexual male. The defendant engaged in extremely graphic and lewd conversations with Jane Doe-3. He described in disturbing detail various acts that he wanted to perform on Jane Doe-3 and responded with depraved enthusiasm to the videos and pictures she sent to him. At one point the defendant even sought to recruit others to join their chat.

DEFENDANT: "know any other freaky people who might want to group chat?"; "can I tell people you're my girlfriend?"; "omg I want to cum on your tits so badb"

JD3: "yes u can tell people imu r gff"; "I know u do daddy but I like it just me and u"

The defendant also attempted to regain contact with Jane Doe-3 after they stopped communicating. The defendant sent messages via Snapchat on October 25, 2024, July 28, 2025, and October 20, 2025, without a response.

Agents also discovered additional evidence of the defendant distributing child pornography to others, including images that he had solicited and received from his victims. For instance, in one chat recovered from the defendant's phone that took place September 9-10, 2025, the defendant shared images he received from Jane Doe-1 with a male individual who went by the handle "Hey hey Bye bye" (the "Unidentified Male" or "UM"). During their chats, the defendant claimed to be an 18 year-old male. The Unidentified Male admitted to being older and asked the defendant several times if he was also older, seeming to sense that the defendant was an adult, but the defendant maintained his fake persona. The Unidentified Male and the defendant each expressed an interest in girls between the ages of 8 and 12 years old. The defendant told the Unidentified Male that he had images of verified young girls that he personally knew and not just shared links to files from the online child pornography marketplace.

5

DEFENDANT:    "U have verified girls? Or just links?"; "I have both"; "But the verified girls are actually submissive and allowed me to ss (screen shot)"[4]

UM:           "Send a young one"

DEFENDANT:    "Like just an example of how old she is?"; "This girl is 9"

UM:           "I would love to play with her"; "Crazy how something that young can get you so turned on"

DEFENDANT:    "Just couple of random examples I made her show me so I know she is real"[5]

UM:           "She's really cute"; "I wish she showed you her titties"

DEFENDANT:    "She does"; "Was very submissive"; "Anything I asked to see"; "So I have tons"; "U like her?  Want to see more of her?"; "U send me too tho"

UM:           "Yeah, she's fucking hot"; "I would love to fuck a girl like that. I bet that pussy is tight."

DEFENDANT:    "Yea"; "Send me some too tho pls"

The UM sent the defendant an image of a young girl and explained that she shared the image with a "middle school group" that he and other pedophiles joined in hopes of meeting young girls.  He then described his frustration with the other pedophiles in the group:

UM:           "like every fucking guy in the group was being annoying to her. If they would have played it cool she would have sent more"; "I was pretending I was younger so I can get more of her but then obviously everyone else fucked it up"; "There have been a bunch of little girls that have come in there.  You just have to chill in there"

---

[4]     Screen shot is a reference to the defendant capturing images from his chats with victims on Snapchat before they are deleted.  Snapchat is a messaging application where a message and any attached media or content disappears and is deleted after being viewed.  When a screenshot is taken before the post is deleted, the sender is notified.

[5]     Here, the defendant is explaining that he directed Jane Doe-1 to send images of herself in specific poses to establish that she was real and not an adult pretending to be a child – like the defendant.

DEFENDANT:   "Ill try and get more girls in there"; "Im in a few middle school groups tho"

The defendant and UM appeared to continued to trade images of young girls.  The defendant complained that the UM was not sending enough images or that the girls he did send were not young enough.

III.   Violation of the Conditions of Release

On March 23, 2026, Pretrial Services filed a Violation Memorandum detailing the defendant's violation of the conditions of his release.  Specifically, the GPS data from the defendant's ankle monitor revealed that from March 8, 2026 through March 18, 2026, the defendant made daily visits to Eisenhower Park in East Meadow, New York.  The defendant claimed that he was unaware that visiting the park was a violation of his release conditions and that he went there to exercise.  According to the Pretrial Services memorandum, "[t]he defendant was reminded that visiting parks is a violation of his release conditions and was further reminded of the very detailed discussion during the post-release meeting surrounding his restrictions as it pertains to the Adam Walsh Act and visiting parks in particular."

IV.   Legal Standard

The defendant is charged by Indictment with three counts of distribution of child pornography, in violation of Title 18, United States Code, Section 2252(a)(2) and one count of possession of child pornography, in violation of Title 18, United States Code, Section 2252(a)(4)(B).  These charges carry a statutory presumption under 18 U.S.C. § 3142(e)(3) that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  See 18 U.S.C. § 3142(e)(3)(E) (presumption for offenses involving minor victims under 18 U.S.C. §§ 2251 and 2252).

To rebut this statutory presumption, the defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight."  United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam).  If this limited burden of production is satisfied, the government retains the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of evidence that the defendant presents a risk of flight.  Id.

To determine whether the presumptions of dangerousness and flight are rebutted by a defendant, the Court must consider:

(1)   the nature and circumstances of the crime charged;
(2)   the weight of the evidence against the defendant;
(3)   the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history and past conduct; and
(4)   the nature and seriousness of the danger to the community or to an individual that would be posed by release.

7

18 U.S.C. § 3142(g).  Once a defendant has met his burden of production relating to danger to the community and risk of flight, the presumption in favor of detention does not disappear entirely but remains a factor for the court to consider.  Mercedes, 254 F.3d at 436.

V.  The Defendant Is a Danger to the Community and Presents a Serious Risk of Flight

Based on the newly discovered criminal conduct summarized above, the defendant will be charged in a superseding indictment that will include multiple counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and coercion and enticement, in violation of 18 U.S.C. § 2422(b).  Those counts carry a mandatory minimum term of imprisonment of 15 years and 10 years, respectively.  Thus, in addition the initial conduct charged in the indictment, which is extremely serious and carries a five-year minimum sentence and the presumption of detention, the evidence recovered from the defendant's cell phones has established that he is not only a consumer of child pornography but a producer and poses a significant danger to children.

The seriousness of the defendant's conduct and his danger to young children cannot be overstated.  The defendant used the internet and applications like Snapchat to prey on young and extremely vulnerable children that will undoubtedly cause them significant psychological harm for years to come, all for his own warped sexual gratification.  The defendant, a father of two, a youth basketball coach and respected member of the community, went online and effortlessly turned himself into whoever was best suited to manipulate his victims into taking and sending him sexually explicit videos and pictures of themselves.  Whether it was a bisexual 11 year-old girl or a bisexual 14 year-old boy, the ease with which the defendant was able to occupy each of his alter egos, connect with his victims and get them to lower their guard is as disturbing as it is dangerous.  The potential harm he poses is amplified by his preference for very young girls.  Indeed, a 9 year-old girl like Jane Doe-1 is unable to protect herself from the defendant – a highly educated man in his 40s.  The defendant built an emotional connection with his victims by flattering them and telling them how beautiful they are, or that he loved them, and then used that trust to have them to do terrible things.

Furthermore, the sexually charged nature of his conversations with these children is just as disturbing as the images he convinced them to send.  The lewd and depraved language he used when describing to his victims the sex acts he wanted to perform on them if given the chance is extreme and further shows how the defendant views young girls as sexual objects to be used for his own desires.  Moreover, the defendant is proud of his ability to personally secure images of "verified" children.  In his chats with Unidentified Male, the defendant was boasting about having pictures girls and not just shared links.  He was proud to share with someone what he was able to convince a 9 year-old girl to do and how "submissive" she was to him.  The fact that the defendant not only produced these materials but enthusiastically distributed them compounds the harm to the victims, the seriousness of the crimes and his danger to the community.

Additionally, the defendant's conduct is not only abusive and shocking to the conscience but is also extremely reckless given everything that he stands to lose.  That the defendant completely ignored the risks and engaged in such extreme sexual conduct with

children evinces his complete lack of self-control and how his sexual attraction to children overwhelms his judgment. Indeed, the fact that the defendant actively sought out victims to exploit despite the severe legal and personal consequences facing him, shows a level of determination to satisfy his depraved interest in children that further elevates the danger he poses to them.

Finally, the defendant's recent attempts to contact the victims, as set forth above, demonstrates that he was continuing in his efforts to prey on young girls right up until his November arrest and is further evidence that he remains a very dangerous individual.

The defendant's violation of his release conditions is also extremely troubling. After his release on bond, the defendant was notified in clear terms that he is to stay away from places frequented by children, most especially and obviously schools and parks. Yet from March 8 to March 18, 2026, the defendant spent time every day at one of the most popular parks on Long Island. Any claim that the defendant did not think that his presence at that park, a place designed for the recreation and enjoyment of children, was in clear violation of his bond, defies common sense. And given the evidence of his egregious exploitation of children, the defendant is certainly not entitled to any benefit of the doubt.

Thus, the nature and circumstances of the defendant's conduct calls for detention pending trial. The evidence from the defendant's cell phones establishes with clear and convincing evidence the danger he poses to the community.

In addition, the evidence in this case is overwhelming and further supports detention. The Kik accounts that the defendant used to distribute child pornography, as charged in the Indictment, have been linked to the defendant through various records obtained during the investigation; a search of the defendant's devices revealed child pornography stored in five of his cell phones; and the defendant admitted the charged conduct during a <u>Mirandized</u> interview with agents on the day his house was searched. With respect to the newly discovered criminal conduct, the strength of that evidence is self-evident. The evidence was obtained from his devices, at least six minor victims have been identified, one victim has been interviewed, and other victim interviews have or are in the process of being scheduled.

Finally, the defendant is now on notice of the additional charges and corresponding penalties, and thus poses a significant risk of flight if allowed to continue on release. Rather than facing the five-year mandatory minimum sentence on the current charges, the defendant will face a statutory mandatory minimum of fifteen years' imprisonment once charged with the sexual exploitation of minors. While the government could have waited until the superseding charges are filed to request detention, given the nature of the conduct, the ease with which the defendant could secure an internet accessible device, even while under pretrial supervision, and the ongoing threat he poses to children while at liberty, remand now is warranted. The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk. <u>See</u> <u>United States v. Jackson</u>, 823 F.2d 4, 7 (2d Cir. 1987); <u>United States v. Cisneros</u>, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); <u>United States v. Townsend</u>, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver

penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

VI. <u>Conclusion</u>

For the reasons set forth above, the defendant should be prevented from continuing to engage in such conduct, on the internet. He poses a significant danger to the community and flight risk if released pending trial, and no combination of bail conditions will ensure the safety of the community and the defendant's continued appearance before the Court.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     /s/      
Paul G. Scotti
Assistant U.S. Attorney
(631) 715-7836

cc:     Nancy Bartling, Esq. (by Email and ECF)
       Clerk of Court (NJC) (by Email and ECF)